UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMONA MARTINEZ DELGADO,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>Defendant. | No. 1:20-cv-00341-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Docs. 17, 18)** |

**I.      Introduction**

Plaintiff Ramona Martinez Delgado ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act.  The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 17, 18, 19.  After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision. Plaintiff's appeal is therefore denied.

**II.      Procedural Background**

On December 11, 2015 Plaintiff filed an application for supplemental security income.  AR 239.  The Commissioner denied the application initially on May 9, 2016 and on reconsideration on September 29, 2016.  AR 178, 187.  Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on June 11, 2018.  AR 54.  Plaintiff appeared at the hearing without representation.  AR 56–57.  On January 25, 2019 the ALJ issued a decision denying Plaintiff's application.  AR 28–39.  The Appeals Council denied review on November 8, 2019.  AR

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  *See* Docs. 6 and 10.

9–15. On March 4, 2020 Plaintiff filed a complaint in this Court. Doc. 1.

### III. Factual Background

#### A. Plaintiff's Testimony

Plaintiff lived in a second story apartment with her two adult sons. AR 64. She used stairs to access her apartment as there was no elevator. AR 64. Her sons took care of her. AR 64. She completed the tenth grade. AR 65. She had a vocational certificate for custodian work. AR 65. She previously performed in-home support services for her mother including laundry, cleaning and bathing. AR 68–69. She suffered from knee pain, asthma, shoulder pain, neck pain and carpal tunnel syndrome. AR 73.

She suffered from COPD which sometimes kept her up at night and caused panic attacks. AR 74. She could do light housecleaning for 10 to 15 minutes before taking a break. AR 74. She had to take her medication in the morning which made her tired. AR 75. She spent most of the day lying down. AR 75. She took Norco for her knee pain. AR 75. She never received injections for her knee. AR 75. Exertion caused knee swelling. AR 75. She elevated her knee three to four times a day which helped. AR 75. She did not drive or have a driver's license. AR 76. She rarely went out into the community. AR 76. Her sons generally prepared or bought her meals. AR 76. She made coffee in the morning and occasionally prepared light meals. AR 77. She suffered from Post-Traumatic Stress Disorder related to past abuse. AR 77. Her medication made her sleep a lot. AR 77. She did not like being around a lot of people. AR 77.

#### B. Vocational Expert

The VE classified Plaintiff's past work, home health attendant, as skilled work at the medium exertional level as generally performed, but at the light exertional level as Plaintiff performed it. AR 79. The ALJ posed a hypothetical to the VE regarding an individual with Plaintiff's vocational profile who could perform work at the medium exertional level with some postural limitations, occasional exposure to pulmonary irritants, occasional public contact of a superficial nature, and a limitation to simple and routine tasks. AR 80. The VE testified that such an individual could not perform Plaintiff's past work as a home health attendant due to the limitation to simple and repetitive tasks. AR 80. The VE testified that such an individual could

2

perform other jobs existing in significant numbers in the national economy, namely: kitchen helper, packer and dining room attendant. AR 80. If the individual had the same limitations as outlined in hypothetical one, but could perform work at the light exertional level only, other jobs would still be available including: marker, room cleaner and laundry worker. AR 81. If the individual's impairments would cause two unscheduled absences per month, no work would be available. AR 81.

### C. Medical Records

Plaintiff visited her primary care physician, Dr. Patel, several times in the fall of 2015 for back pain, knee pain and hypertension. AR 752–757. A knee x-ray revealed mild degenerative changes. Plaintiff was prescribed Norco and referred to an orthopedist. AR 324, 756–57. Following a November 2015 orthopedic examination by Dr. Shantharam, Plaintiff was diagnosed with internal derangement with degenerative arthritis and a meniscus tear. AR 413–14. Arthroscopic surgery was discussed as a possible (but likely ineffective) treatment option, Plaintiff opted to hold off on surgery. AR 412–414.

Plaintiff visited Dr. Patel again in January 2016 who diagnosed lumbago, sciatica, hypertension, wrist pain, ordered imaging and referred Plaintiff to an orthopedist. AR 762–63. Later the same month, x-rays of her back at urgent care were normal. AR 360–61, 368. Plaintiff continued visiting Dr. Patel from March 2016 through September 2018 and received medication for hypertension, back pain, leg pain, knee pain, stress incontinence, anxiety, asthma and chronic obstructive pulmonary disease (COPD). AR 766–80; 1203–1257. A February 2018 abdominal x-rays revealed degenerative changes of the spine. AR 1094.

Plaintiff visited a psychiatric clinic in March 2015 for PTSD reporting flash backs to when she was the victim of rape. AR 327. Treatment notes reflect that she was distracted, down, anxious and displayed symptoms of avoidance, hypervigilance, nightmares, repression, emotional numbness, a history of abuse, depression, irritability, hopelessness, grief, low energy, poor sleep, cognitive difficulties, irrational thinking, relationship difficulties and poor social skills. AR 331. Plaintiff followed up throughout 2015 for therapy and psychiatric medication management. Examination notes documented similar symptoms and findings in addition to routinely disheveled

3

appearance, pressured speech, tearfulness, anger, fatigue, anxious mood and anxious affect, though on some occasions she reported the medications were helping and she was stable on examination. AR 335–351. She followed up on August 24, 2015 for medication management and noted she was grieving the loss of her brother. AR 343–44. Plaintiff visited the ER on March 29, 2016 with a potential asthma exacerbation. AR 419–429. She reported inability to swallow hypertension medication due to coughing. AR 429. Chest x-rays were normal and she was discharged. AR 419–29.

Plaintiff treated at Fresno County Department of Behavioral Health between March and June 2018. AR 787–98. She was diagnosed with major depressive disorder, PTSD and anxiety. AR 787–91. She was prescribed Paxil which improved her symptoms and caused no side effects. AR 794–95. Her mental status exam was normal on June 1, 2018. AR 794–95.

### D.     Medical Opinions and Administrative Findings

As to Plaintiff's physical residual functional capacity, non-examining state agency medical consultants J. Linder, MD and J. Mitchell, MD reviewed Plaintiff's file at the initial and reconsideration levels, respectively. AR 151–52, 170–71. Both concluded that Plaintiff could perform medium work with no concentrated exposure to respiratory irritants. AR 151–52, 170–71. As to Plaintiff's mental residual functional capacity, non-examining state agency consultants R. Liss, Ph.D. and D. Funkenstein, MD reviewed Plaintiff's file at the initial and reconsideration levels, respectively. AR 152–54, 171–73. Both concluded that Plaintiff was capable of sustaining simple tasks, interaction and adaptation. AR 153, 172.

Dr. Wagner performed a consultative internal medicine evaluation on April 25, 2016. AR 731–35. He diagnosed hypertension, asthma/COPD, right knee pain and low back pain. AR 735. He opined that Plaintiff could perform medium work with frequent postural and manipulative activities, and no prolonged exposure to respiratory irritants. AR 735.

Dr. Michiel performed a consultative psychiatric examination of Plaintiff on August 25, 2018. AR 1129–35. She described her history of trauma and rape with intrusive thoughts, nightmares, anxiety around others and daily panic attacks. AR 1129–30. Dr. Michiel noted that Plaintiff was unkept, poorly groomed, had inadequate personal hygiene and was crying throughout

4

the entire interview. AR 1131. Dr. Michiel noted that Plaintiff had depressed mood, intense affect, constantly rubbed her hands and shook her legs, was vigilant and guarded. AR 1131. Her thought process was goal directed and not delusional but guarded. AR 1131. Plaintiff admitted hearing voices of men telling her they will kill her, and she was paranoid around others. AR 1131. Plaintiff was oriented to person and place, but not date. AR 1131. She could do digit span five out of five forward and two backward. AR 1131. She could recall three out of three items on immediate recall, but only one after five minutes. AR 1131. She could do simple math. AR 1131. She could name the current president but not the former president. AR 1131. She could not interpret the proverb "don't cry over spilled milk." AR 1131. She could not recall what she ate the night before and could not recall her children's birthdays. AR 1131. She recalled dropping out of school in the 10th grade, going to juvenile hall and attending special education. AR 1131. Dr. Michiel diagnosed post-traumatic stress disorder with a global assessment functioning (GAF) score of 48. AR 1131–32. Dr. Michiel opined Plaintiff was unable to maintain attention and concentration to carry out simple job instructions (AR 1132), and also completed a check-box opinion (the Medical Source Statement of Ability to Work-Related Activities (Mental)) in which Dr. Michiel opined on Plaintiff's ability to perform the following work-related activities, among others: 1) understand and remember simple instructions (no limitation), 2) carry out simple instructions (mild limitation), 3) make judgments on simple work-related decisions (moderate limitation), 4) interact appropriately with the public (mild limitation), 5) interact appropriately with supervisors and co-workers (moderate limitation), and 6) respond appropriately to usual work situations and to changes in routine work setting (marked limitation). AR 1134.

## IV. Standard of Review, Generally

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the

5

record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V. **The Disability Standard**

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial

gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy, given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## VI.    The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of December 11, 2015.  AR 31.  At step two, the ALJ found that Plaintiff had the following severe impairments:  mild degenerative changes in the right knee, obesity, asthma, chronic obstructive pulmonary disease (COPD), post-traumatic stress disorder (PTSD), and musculoligamentous strain of the back.  AR 31.  The ALJ found that Plaintiff's hypertension and umbilical hernia were non-severe.  AR 31.  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 31.  Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. 416.967(c), with some postural limitations, occasional exposure to pulmonary irritants, occasional public contact of a superficial nature, and a limitation to simple repetitive tasks.  AR 32–33.  At step four, considering Plaintiff's RFC, the ALJ found that Plaintiff could not perform her past relevant work as a home health attendant as actually or generally performed.  AR 37.  At step five, the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely kitchen helper, packer and dining room attendant.  AR 38.  Accordingly, the ALJ found that Plaintiff had not been under a disability since her application date of December 11, 2015.  AR 38.

## VII. Issues Presented

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Michiel's opinion and failed to provide clear and convincing reasons for rejecting her subjective symptomology.

### A. Dr. Michiel's Opinion

#### 1. Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough

summary of the facts and conflicting evidence, stating his interpretation thereof, and making

findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799

F.2d 1403, 1408 (9th Cir. 1986)).

For applications filed before March 27, 2017, the regulations provide that more weight is

generally given to the opinion of treating physicians, which are given controlling weight when well

supported by clinical evidence and not inconsistent with other substantial evidence. 20 C.F.R. §

404.1527(c)(2); *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9,

1996) (noting that the opinions of treating physicians, examining physicians, and non-examining

physicians are entitled to varying weight in residual functional capacity determinations). An ALJ

may reject an uncontradicted opinion of a treating or examining physician only for "clear and

convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or

examining physician may be rejected for "specific and legitimate" reasons. *Id.* at 830. In either

case, the opinions of a treating or examining physician are "not necessarily conclusive as to either

the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*,

169 F.3d 595, 600 (9th Cir. 1999). Regardless of source, all medical opinions that are not given

controlling weight are evaluated using the following factors: examining relationship, treatment

relationship, supportability, consistency, and specialization. 20 C.F.R. § 404.1527(c). The opinion

of a non-examining physician (such as a state agency physician) may constitute substantial

evidence when it is "consistent with independent clinical findings or other evidence in the record."

*Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### 2.    **Analysis**

Dr. Michiel's opinion that Plaintiff was unable to carry out simple job instructions (AR

1132) was contradicted by the opinions of the two non-examining state agency consultants who

concluded that Plaintiff was capable of sustaining simple tasks. AR 153, 172. The ALJ was

therefore required to provide specific and legitimate reasons for rejecting Dr. Michiel's opinion.

*Lester*, 81 F.3d at 830.

The ALJ provided the following discussion of Dr. Michiel's opinion:

> Dr. Michiel performed a thorough, well-documented mental evaluation of the claimant. Nonetheless, I find it only somewhat persuasive. The opinion is inconsistent with the other evidence, which does not discuss hygiene issues of this level, or the level of hallucinations she reported (See Exhibit B9F, pp. 2-3, 6-7). The examination appears to be an overstatement of the claimant's restrictions, but does support her ability to perform simple repetitive tasks with limited interactions with the public.

AR 35.   Indeed, the records cited by the ALJ contrasted with Dr. Michiel's mental status examination findings concerning hygiene and hallucinations.  *See* AR 788–89, 792–93 (2018 Fresno Behavioral Health psychiatric examination notes reflecting that Plaintiff was well groomed and denied hallucinations).  Consistency with objective medical evidence is a relevant factor to consider when evaluating opinion evidence.  *See* 20 C.F.R. § 404.1527(c).

Plaintiff's critique of the ALJ's above-quoted reasoning is two-fold: 1) poor grooming and hallucinations were not the sole examination findings supporting Dr. Michiel's functional assessment, and 2) the ALJ selectively cited two records inconsistent with Dr. Michiel's opinion but failed to consider the context of Plaintiff's mental health records as a whole.

As Plaintiff underscores, Dr. Michiel's opinion was indeed based upon numerous examination findings beyond poor grooming and hallucinations.  Notably, however, the 2018 Fresno Behavioral Health psychiatric examination records cited by the ALJ contrasted with Dr. Michiel's examination findings in numerous respects, not just as to grooming and hallucinations. Dr. Michiel observed constant fidgeting, vigilance, no orientation as to date, poor recall and poor memory (AR 1131).  In contrast, the Fresno Behavioral Health records noted as follows: Plaintiff's behavior was engaged, calm and cooperative; she displayed full or normal orientation; her memory, recall and/or cognition were described as intact, fair, normal or adequate; and her motor activity

was described as normal with no unusual movements. AR 788–89, 792, 794. The ALJ reasonably concluded that these records undermined Dr. Michiel's examination findings even though the ALJ drew specific attention only to poor grooming and hallucinations.

Plaintiff also contends that the ALJ overlooked numerous other records of psychiatric examinations which were more consistent with Dr. Michiel's findings. Br. at 10 (citing AR 331, 334, 335, 337–44, 789). Although the ALJ did not demonstrate acute awareness of the examination findings therein, she did not ignore the records Plaintiff underscores. She cited those records and provided a brief summary of the same. *See* AR 34–35. Moreover, the vast majority of the records Plaintiff underscores were from her treatment at the House Psychiatrist Clinic in 2015. Those records predated a two-year gap between Plaintiff's treatment with psychiatric professionals. Thereafter, Plaintiff underwent three mental status examinations at Fresno County Behavioral Health in March, April and June 2018, the last of which reflected that Paxil had improved her symptoms and caused no side effects (as noted by the ALJ). AR 35 (citing AR 794–95). As summarized above, Plaintiff's mental status at those three examinations contrasted significantly with her mental status a few months later at her August 2018 consultative examination with Dr. Michiel.

The ALJ's opinion reflects that she did consider the psychiatric record as a whole, including records supporting and detracting from Dr. Michiel's opinion. The records the ALJ cited reasonably supported her conclusion even if the ALJ placed undue focus on comparatively less significant findings concerning poor grooming and hallucinations. If the evidence could reasonably support two conclusions the court "may not substitute its judgment for that of the Commissioner," and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).

Moreover, the ALJ did not reject Dr. Michiel's opinion in its entirety. Dr. Michiel identified

limitations in the areas of understanding, remembering and carrying out job instructions, limitations in social interaction and limitations in concentration. AR 1133–34. The ALJ reasonably accommodated those limitations in Plaintiff's RFC by limiting her to occasional public contact of a superficial nature and to simple repetitive tasks.[2] This RFC was more restrictive than the RFC articulated by the non-examining state agency consultants. *See* AR 153, 172. The ALJ stopped short of fully incorporating Dr. Michiel's stated conclusion that Plaintiff was "unable to maintain attention and concentration to carry out simple job instructions." In that respect, the RFC was reasonably supported by the ALJ's cited medical records and was fully supported by the opinion of the non-examining state agency consultants who concluded that Plaintiff could perform simple tasks. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

### B.        Plaintiff's Subjective Complaints

#### 1.        Applicable Law

The ALJ is responsible for determining credibility,[3] resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental

---

[2] As noted by Defendant in his response brief, there is substantial Ninth Circuit case law finding that mild to moderate limitations in concentration and social interaction are accommodated by work restrictions similar or identical to those the ALJ incorporated into Plaintiff's RFC here. *See, e.g.*, *Whitman v. Saul*, 800 F. App'x 568, 569 (9th Cir. 2020) (unpublished) (moderate social limitations accommodated by restriction to no public contact and occasional co-worker contact); *Hairston v. Saul*, 827 F. App'x 772, 773 (9th Cir. 2020) (unpublished) (moderate concentration limitations accommodated by restriction to simple repetitive tasks).

[3] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character," but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

impairment or disability.  42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."  S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons.  *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10.  Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and, any other relevant evidence included in the individual's administrative record.  S.S.R. 16-3p at 5

### 2.    Analysis

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and found no malingering.  AR 36.  Thus, the ALJ was required to articulate clear and convincing reasons for rejecting Plaintiff's reported symptoms.  *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017).  The ALJ did so, finding Plaintiff's

13

allegedly disabling symptoms inconsistent with various medical and non-medical evidence.

The ALJ offered the following summary of her reasoning:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because while reporting hypertension as an impairment, she has a history of noncompliance in taking her medication. This undermines her complaints. She has reported being able to perform a wide range of activities of daily living to two consultative examiners, which suggests she is not as limited as alleged (Exhibits B7F; B12F). The claimant testified she is no longer receiving therapy, which indicates she is not as disabled as asserted. A review of the entire record shows she has had minimal treatment for all of her conditions. Although she receives medication for her back, the only radiological work regarding her back, was from abdominal x-rays which included an ancillary notation of degenerative changes of the spine. The extent of the degeneration was not indicated, and no further investigation of this occurred, suggesting it was not considered severe, Furthermore, she has not been referred to pain management, and has not received any injections, or referrals for chiropractic care or physical therapy. The claimant's mental health treatment has also been minimal. While the consultative examiner gave her some marked symptoms, her presentation at the consultative examiner is inconsistent with any other records, as discussed above.

AR 36–37.

First, the ALJ noted that Plaintiff was non-compliant with hypertension medication. Plaintiff reasonably disputes the relevance of the ALJ's observation. Non-compliance with hypertension medication appears to be a largely irrelevant consideration. Plaintiff's subjective symptomology had little to do with her hypertension. The ALJ found hypertension to be a non-severe impairment, and there is no indication that Plaintiff was non-compliant with her medication regimens for her severe impairments. Nevertheless, the ALJ identified several other reasons for rejecting Plaintiff's subjective symptomology. "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

Second, the ALJ noted that Plaintiff "reported being able to perform a wide range of activities of daily living to two consultative examiners, which suggests she is not as limited as

alleged. AR 36 (citing Exhibits B7F; B12F). This is a clear and convincing basis for rejecting

subjective symptomology. *See Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 693

(9th Cir. 2009) (finding the ALJ satisfied the "clear and convincing" standard for an adverse

credibility determination where claimant engaged in "gardening and community activities . . .

evidence [which] did not suggest Valentine could return to his old job," but "did suggest that

Valentine's later claims about the severity of his limitations were exaggerated.").

Plaintiff takes issue with the ALJ's conclusion regarding her daily activities. Plaintiff

contends that she only "vaguely reported to Dr. Wagner that she can shop, cook, clean and perform

daily activities without assistance," but also clarified that "her sons help her, and she often lacks

the motivation to do anything around the home." Br. at 13. Plaintiff reasonably observes that her

statements concerning her capabilities were vague and do not directly support work-related

functionality. However, the statements concerning her limitations are equally vague and do not

directly support work-related limitations. Plaintiff's argument is unpersuasive because it does not

attempt to explain what specific symptomology should have been credited by the ALJ, or how that

symptomology would have supported more restrictive functional limitations than the ALJ included

in the RFC. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) ("The claimant carries

the initial burden of proving a disability.") (citation omitted).

Third, the ALJ appropriately identified objective medical evidence undermining the

severity of Plaintiff's alleged symptoms, including the lack of corroborative imaging concerning

her back impairment. Although subjective pain testimony "cannot be rejected on the sole ground

that it is not fully corroborated by objective medical evidence," the medical evidence "is still a

relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v.

Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

Finally, the ALJ found that Plaintiff had received minimal treatment for her conditions,

including minimal mental health treatment, no follow up for her back condition, no injection therapy, and no referrals for pain management, chiropractic care or physical therapy. Conservative treatment is a clear and convincing reason for rejecting subjective symptomology. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

Plaintiff contends that "the ALJ failed to note that Plaintiff consistently received narcotic pain medication, she was referred to an orthopedic specialist for her knee impairment, and she was recommended to undergo surgery (which she only declined out of excessive anxiety)." Br. at 12. The ALJ did indeed acknowledge Plaintiff's medication regimen. AR 33 ("In January 2018, the doctor began slowly weaning the claimant off Norco."); AR 37 ("Although she receives medication for her back . . ."). The ALJ also acknowledged that knee surgery was discussed and declined. AR 33 ("Arthroscopic surgery was discussed . . . At a February 2016 follow-up, the claimant said she was not ready for surgery."). Notwithstanding Plaintiff's explanation for declining surgery, the ALJ reasonably concluded that her conservative treatment undermined the alleged severity of Plaintiff's impairments.

## VIII.  Order

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied. The Clerk of Court is directed to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Ramona Martinez-Delgado.


IT IS SO ORDERED.

Dated: __**May 11, 2021**__            _____**/s/ Gary S. Austin**_____
                                                    UNITED STATES MAGISTRATE JUDGE